## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
Erica J. Wilder,                                    )
                                                         )
For herself and all others similarly    )
situated                                             )
                                                         )
                            Plaintiffs         )
                                                         )          **CIVIL ACTION NO. 10-CV-10365-PBS**
            v.                                       )
                                                         )
Toyota Financial Services Americas )
Corporation                                      )
                                                         )
and                                                   )
                                                         )
Toyota Motor Credit Corporation,    )
                                                         )
                            Defendants      )
_____)


## PLAINTIFFS' FIRST AMENDED COMPLAINT
## AND
## DEMAND FOR JURY TRIAL
## AND
## CLASS ACTION

## INTRODUCTION

The Plaintiff, Erica J. Wilder, and all others similarly situated, by their attorney, Walter H. Jacobs, J.D., complaining of the Defendants, Toyota Financial Services Americas Corporation and Toyota Motor Credit Corporation, allege Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Fraud, Violation of Mass. Gen. Laws ch. 255B, § 20A and violation of Mass. Gen. Laws ch. 93A and seek class action status as follows:

1

## PARTIES

1.  Erica J. Wilder, hereinafter "Plaintiff", is a natural person residing in Lawrence, County of Essex, Commonwealth of Massachusetts.

2.  Other individuals similarly situated who are residents of the Commonwealth of Massachusetts.

3.  Toyota Financial Services Americas Corporation, hereinafter "TFSA", is a corporation incorporated in the state of California.

4.  TFSA is a corporation with a principal place of business in Torrance, California.

5.  TFSA regularly conducts business within the Commonwealth of Massachusetts.

6.  Toyota Motor Credit Corporation, hereinafter "TMCC", is a corporation incorporated in the state of California.

7.  TMCC is a corporation with a principal place of business in Torrance, California.

8.  TMCC regularly conducts business within the Commonwealth of Massachusetts.

## FACTS

9.  On June 27, 2008, Plaintiff bought a used 2004 Grand Cherokee Jeep ("the Vehicle") from Toyota of Watertown, Massachusetts with a TMCC Gold Extra Care Vehicle Service Agreement with financing through TFS for a total price of $21, 751.80.

10.  Plaintiff signed a written Retail Installment Contract ("the Contract") on June 27, 2008.

11.  The contract was signed by Plaintiff and a representative of Toyota of Watertown.

12.  Consideration for the purchase of the Vehicle with Gold ExtraCare Vehicle Service Agreement was the price of $21, 751.80.

13. The Contract contained multiple other contracted provisions.

14. The Contract formed a binding agreement between Plaintiff and Toyota of Watertown.

15. Toyota of Watertown assigned its rights under the Contract to Defendant TMCC.

16. One provision of the Contract provided under # "9 Default and Right to Cure. You will be in default under this contract if you fail to pay any payment according to the payment schedule or if any event occurs which substantially impairs the value of the vehicle. If you default under this contract you will have the right to cure your default in the manner and to the extent specified in the Massachusetts General Laws Annotated."

17. Another provision of the Contract provided under # "10 Required Repayment in Full Before the Scheduled Date. Subject to your right to cure in the manner and to the extent specified in the Massachusetts General Laws Annotated, if you are in default, the Creditor can accelerate the payments under this contract and demand that you pay all that you owe at once."

18. Another provision of the contract provided under # "11 Repossession of the Vehicle for Failure to Pay.   Subject to your right to cure in the manner and to the extent specified in the Massachusetts General Laws Annotated, the Creditor can take the vehicle from you (repossession) if you default under this contract."

19. The contract provided under # "19 Governing Law. This contract will be governed by the laws of the Commonwealth of Massachusetts."

20. Plaintiff relied on the express agreements embodied in the written words of the contract.

21. Plaintiff expected Defendants to abide by and honor the binding contractual commitments made in the contract.

22. Defendants never sent a notice of acceleration to Plaintiff.

23. Defendants never contracted with Plaintiff for the right to "clos(e) her account to posting" prior to taking possession of the Vehicle.

24. On December 30, 2008, Defendants sent Plaintiff a notice of Rights of Defaulting Buyer under the Massachusetts Motor Vehicle Installment Sales Act (the "Notice of Rights").

25. The Notice of Rights outlined Defendants' rights to repossess the vehicle or sue to obtain a judgment for the amount of the debt.

26.  Defendants never sued Plaintiff to obtain a judgment.

27. Defendants never warned Plaintiff in the Notice of Rights that they could block access to her account by "clos(ing) her account to posting."

28. Defendants never warned Plaintiff in the Notice of Rights that they would block access to her account by "clos(ing) her account to posting."

29. Defendants never informed Plaintiff prior to her 93A Demand Letter that they had blocked access to her account by "clos(ing) her account to posting."

30. Defendants never warned Plaintiff in the Notice of Rights that they might consider accelerating her debt prior to taking possession.

31. Defendants never informed Plaintiff in the Notice of Rights that they were accelerating her debt.

32. Defendants never warned Plaintiff in the Notice of Rights that they could or would take any actions other than filing suit or repossessing the vehicle.

33. Defendants never informed Plaintiff that they had accelerated her debt.

34. Plaintiff made her usual payments electronically.

35. On January 23, 2009, Plaintiff was behind in her monthly payments.

36. In late January, 2009, Plaintiff was told to pay $470.00 to cure the default.

37. Plaintiff was told to pay the money by direct debit before her paycheck had been cashed and deposited to her account.

38. Plaintiff's deposit was not credited before the direct debit to TFS.

39. Defendants admit, in response to the 93A Demand Letter, that on February 5, 2009, TMCC "closed her account to posting" blocking Plaintiff's usual electronic access to her account and preventing her from exercising her legal and contracted right to cure the default.

40. Defendants, by "clos(ing) her account to posting" prevented Plaintiff from curing the default by any other means as well.

41. Defendants claim, in response to Plaintiff's 93A Demand Letter, that "(a)s a practical matter, when an order for repossession is issued, TMCC must close the customer's account."

42. Defendants admit, in response to the 93A Demand Letter, that "as of February 5, Ms. Wilder's account was no longer open to accept payment."

43. Defendants repossessed the Vehicle on or about February 10, 2009.

44. TMCC and TFS knew or should have known that by blocking Plaintiff's usual electronic access to her account they would seriously hinder her ability to cure the default before repossession.

45.  TMCC and TFS knew or should have known that by closing Plaintiff's account to posting they would completely prevent her from exercising her legal and contracted right to cure the default before repossession.

5

46. Mass. Gen. Laws ch. 255B § 20A(e) for Retail Installment Sales of Motor Vehicles provides that "Unless the secured creditor has first notified the buyer that he has elected to accelerate the unpaid balance of the obligation because of default, brought action against the buyer, or proceeded against the collateral, the buyer may cure a default consisting of a failure to pay money by tendering the amount of all unpaid sums due at the time of tender, without acceleration, plus any unpaid delinquency or deferral charges. Such a cure shall restore the buyer to his rights under the agreement as though the defaults had not occurred subject to the provisions of subsection (b)."

47. Defendants never sent a notice of acceleration to Plaintiff before "clos(ing) her account to posting" so that no manner of payment would be posted.

48. Defendants never sent a notice of acceleration to Plaintiff before blocking her access to her account in the manner in which she usually accessed the account.

49. Defendants blocked Plaintiff's access to her account in the manner in which she usually accessed the account prior to proceeding against the collateral by taking possession many days later.

50. Defendants blocked Plaintiff's access to her account in the manner in which she usually accessed the account prior to bringing action against the her.

51. Plaintiff attempted to cure the default but could not because TFS had blocked Plaintiff's electronic access to her account which was the manner she usually accessed the account.

52. Defendants prevented Plaintiff from exercising her legal rights to cure her default.

53. Defendants repossessed Plaintiff's car.

54. Plaintiff sent TFS a 93A demand letter.

55. Defendant TFS failed to respond to their unfair business practices (of blocking Plaintiff's access to her account to prevent her from curing the default before they took possession of the Vehicle as was her right under the Contract and under Massachusetts law).

56. Defendant TFS failed to respond with any reasonable settlement of their unfair business practices (of blocking Plaintiff's access to her account to prevent her from curing the default before they took possession of the Vehicle as was her right under the Contract and under Massachusetts law).

57. Defendants sold Plaintiff's car causing her significant financial loss including loss of use of the vehicle, loss of insurance paid and loss of the benefit of the extra care contract.

58. Defendants, through their agent, Central Credit Services, Inc., seek additional money from Plaintiff for a deficiency on the account.

## CLASS ACTION CERTIFICATION

54. Plaintiff seeks to represent a class pursuant to Fed. R. Civ. P. 23 with respect to each of the claims below, consisting of:

> All persons who purchased cars and arranged financing through TFS and were subject to repossession for default and had their accounts closed to posting before the repossession occurred.

The proposed class may include subclasses. In the event that discovery shows, or the Court determines, that the proposed class cannot satisfy Fed. R. Civ. P. 23, Plaintiffs may propose to modify or narrow the definition of the class or any subclass.

55. **NUMEROSITY**: The number of persons in the class is estimated to exceed 1,000. It would be impracticable to bring all, or even a substantial percentage of, such persons before the Court as individual plaintiffs through joinder.

56. **COMMONALITY**: There are questions of law and fact common to the class. The two overarching questions of law and fact common to all members of the class are that they contracted with Defendants for purchase of a car and financed that purchase through TFS and were declared in default but had their accounts closed to posting by Defendants or their agents before repossession of the vehicle took place preventing the default from being cured.

57. **TYPICALITY:** The claims of the Plaintiff are typical of the claims of all class members because Defendants have subjected Plaintiff and the class to the same unfair business practices.

58. **ADEQUACY OF REPRESENTATION**: Plaintiff is a fair and adequate representative of the class because:

   a. Plaintiff is willing to and able to represent the proposed class and has every incentive to pursue this action to a successful conclusion.

   b. Plaintiff's interests are not in any way antagonistic to those of the other class members.

   c. Plaintiff is represented by counsel competent and ready to pursue litigating a major class action involving Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Fraud, Violation of Mass. Gen. Laws ch. 255B, § 20A and violation of Mass. Gen. Laws ch. 93A.

59. **PROPRIETY OF MAINTENANCE OF CLASS ACTION UNDER FED. R. CIV. P. 23(b):** Class action status is appropriate under Fed. R .Civ. P. 23(b)

because Defendant has acted on grounds generally applicable to the class, thereby making declaratory and injunctive relief appropriate with respect to the class as a whole. Class action is also appropriate under Fed. R. Civ. P. 23(b) because the common questions of law and fact identified above predominate over questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. All members of the class were subjected to the same unfair business practices. Requiring each class member to pursue his or her claim individually would entail needless duplication and would waste the resources of both the parties and the Court. The financial burden of proving that Defendant engaged in such a practice also would make the prosecution of individual actions virtually impossible for most, if not all, members of the class.

## COMPLAINT

### COUNT 1
### BREACH OF CONTRACT

60. Plaintiff repeats and realleges ¶¶ 1-59 above and incorporates them herein by reference.

61. Plaintiff and Toyota of Watertown signed a written Contract (that Toyota of Watertown assigned to Defendants) that expressly agreed to abide by all Massachusetts laws.

62. Plaintiff and Toyota of Watertown signed a written Contract that Toyota of Watertown assigned to Defendants that expressly agreed to abide by Massachusetts law regarding curing any default.

9

63. Plaintiff and Toyota of Watertown signed a written Contract that Toyota of Watertown assigned to Defendants that expressly agreed to abide by Massachusetts law regarding acceleration of the debt.

64. Mass. Gen. Laws ch. 255B, § 20A(e) for Retail Installment Sales of Motor Vehicles provides that "**Unless the secured creditor has first notified the buyer that he has elected to accelerate the unpaid balance of the obligation because of default, brought action against the buyer, or proceeded against the collateral, the buyer may cure a default consisting of a failure to pay money** by tendering the amount of all unpaid sums due at the time of tender, without acceleration, plus any unpaid delinquency or deferral charges. Such a cure shall restore the buyer to his rights under the agreement as though the defaults had not occurred subject to the provisions of subsection (b)."

65. Defendants prevented plaintiff from exercising her rights under the express terms of the Contract to cure the default by "clos(ing) the customer's account" and making sure the "account was no longer open to accept payment" in violation of Mass. Gen. Laws ch. 255B, § 20A(e). Defs.' response to Pl's 93A Demand Letter.

66. Defendants never informed Plaintiff that they would breach the Contract by blocking her access to the account as of a certain date.

67. Defendants violated a material term of the contract by violating Mass. Gen. Laws ch. 255B, § 20A(e) by "closing…(Plaintiff's) account" so that it was "no longer open to accept payment" prior to repossession thereby preventing Plaintiff from exercising her right to cure the default. Def.'s Response to Pl's 93A Demand Letter.

WHEREFORE Plaintiff demands:

    i.   Reimbursement for all money paid.

    ii.   An injunction barring Defendants from violating the terms of car purchase and sale contracts in the future

    iii.   An injunction barring Defendants from any further collection efforts directly or through any other entity.

    iv.   An injunction barring Defendants from selling Plaintiff's alleged debt.

    v.   An injunction barring Defendants from reporting any negative credit information regarding the Plaintiff's account.

    vi.   An order for interest, costs, and attorney fees plus such additional orders as this Honorable Court may deem fair and just.

### COUNT 2
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

68. Plaintiff repeats and realleges ¶¶ 1-67 above and incorporates them herein by reference.

69. Defendants, by failing to give Plaintiff the benefit of the bargain that was the basis of the Contract, by resorting to violations of the express terms of the Contract, also breached the covenant of good faith and fair dealing inherent in every contract in Massachusetts.

70. Defendants, by failing to give Plaintiff the benefit of the bargain that was the basis of the Contract, by resorting to violations of Mass. Gen. Laws ch. 255B, § 20A(e), also breached the covenant of good faith and fair dealing inherent in every contract in Massachusetts.

71. Defendants, by failing to give Plaintiff the benefit of the bargain that was the basis of the Contract, by resorting to violations of Mass. Gen. Laws ch. 93A, also breached the covenant of good faith and fair dealing inherent in every contract in Massachusetts.

WHEREFORE Plaintiff demands:

    i.   Reimbursement for all money paid.

    ii.   An injunction barring Defendants from violating the terms of car purchase and sale contracts in the future

    iii.   An injunction barring Defendants from any further collection efforts directly or through any other entity.

    iv.   An injunction barring Defendants from selling Plaintiff's alleged debt.

    v.   An injunction barring Defendants from reporting any negative credit information regarding the Plaintiff's account.

    vi.   An order for interest, costs, and attorney fees plus such additional orders as this Honorable Court may deem fair and just.

**COUNT 3**
**FRAUD**

72. Plaintiff repeats and realleges ¶¶ 1-71 above and incorporates them herein by reference.

73. Plaintiff and Toyota of Watertown signed a written Contract that Toyota of Watertown assigned to Defendants that expressly agreed to abide by all Massachusetts laws.

74. Defendants knew it was their policy when the time provided in the Notice of Rights had expired to close a customer's account so that it was "no longer open to accept payment" prior to taking possession thereby preventing a customer from exercising a contractual an legal right to cure the default in violation of Mass. Gen. Laws ch. 255B, § 20A(e).

75. Defendants knew that they had not contracted for the right to close a customer's account so that it was "no longer open to accept payment" prior to taking possession thereby preventing a customer from exercising a contractual right to cure the default in violation of Mass. Gen. Laws ch. 255B, § 20A(e).

76. Defendants knew that they had not warned customers that they could or would close a customer's account so that it was "no longer open to accept payment" prior to taking possession thereby preventing the customer from exercising a contractual right to cure the default in violation of Mass. Gen. Laws ch. 255B, § 20A(e).

77. Defendants knew that Plaintiff would rely on the contract provision that Defendants would comply with Massachusetts General Laws regarding Plaintiff's "right to cure…(the) default in the manner and to the extent specified in the Massachusetts General Laws Annotated."

78. Defendants knew or should have known that Massachusetts' retail installment sales of motor vehicles statutes allow a buyer to cure a default up to the time of taking possession unless they sent a notice of acceleration or commenced civil action.

79. Plaintiff relied on Defendants' express agreement to abide by Massachusetts General Laws.

80. Plaintiff had arranged for a personal family loan to cure the default but was unable to access her account when she attempted to make payment.

81. Defendant TFS was informed of the contractual and statutory violations but still did not allow Plaintiff to cure the default.

WHEREFORE Plaintiff demands:

    i. Reimbursement for all money paid.

    ii. An injunction barring Defendants from violating the terms of car purchase and sale contracts in the future

    iii. An injunction barring Defendants from any further collection efforts directly or through any other entity.

    iv. An injunction barring Defendants from selling Plaintiff's alleged debt.

    v. An injunction barring Defendants from reporting any negative credit information regarding the Plaintiff's account.

    vi. An order for interest, costs, and attorney fees plus such additional orders as this Honorable Court may deem fair and just.

**COUNT 4**
**VIOLATIONS OF MASS. GEN. LAWS CH. 255B, § 20A(e)**

82. Plaintiff repeats and realleges 1-81 above and incorporates them herein by reference.

83. Defendants knew or should have known that customers would rely on the express contract provision to abide by all Massachusetts statutes.

84. Defendants knew or should have known that customers would rely on Defendants' legal obligation to abide by all Massachusetts statutes regarding curing a default.

85. Defendants knowingly and willfully adopted a policy when the time provided in the Notice of Rights had expired to close a customer's account so that it was "no longer open to accept payment" prior to taking possession thereby preventing a customer from exercising a legal right to cure the default in violation of Mass. Gen. Laws ch. 255B, § 20A(e).

WHEREFORE Plaintiff demands:

    i.   Reimbursement for all money paid.

    ii.   An injunction barring Defendants from violating the terms of car purchase and sale contracts in the future

    iii.   An injunction barring Defendants from any further collection efforts directly or through any other entity.

    iv.   An injunction barring Defendants from selling Plaintiff's alleged debt.

    v.   An injunction barring Defendants from reporting any negative credit information regarding the Plaintiff's account.

    vi.   An order for interest, costs, and attorney fees plus such additional orders as this Honorable Court may deem fair and just.

## COUNT 5
## VIOLATIONS OF MASS. GEN. LAWS CH. 93A

86. Plaintiff repeats and realleges 1-85 above and incorporates them herein by reference.

87. Defendants knew or should have known that customers would rely on the express contract provision to abide by all Massachusetts statutes.

88. Defendants knew or should have known that customers would rely on the express contract provision to abide by all Massachusetts statutes regarding curing a default.

89. Defendants knew or should have known that failure to abide by Massachusetts statutes regarding retail installment sales of motor vehicles was also a violation Mass. Gen. Laws ch. 93A.

90. Defendants knew or should have known that closing a customer's account so that it was "no longer open to accept payment" prior to taking possession thereby preventing a customer from exercising a contractual and statutory right to cure the default in violation of Mass. Gen. Laws ch. 255B, § 20A(e) was an unfair, deceptive, and oppressive business practice in violation of Mass. Gen. Laws ch. 93A.

91. Defendants knew or should have known that blocking Plaintiff's access to her account prior to notification of acceleration, commencing a civil action or taking possession (thereby preventing Plaintiff from exercising her contractual and statutory right to cure a default was an unfair business practice and a violation Mass. Gen. Laws ch. 93A.

92. Defendant TFS failed to respond with any reasonable settlement of their unfair business practices after being sent a 93A Demand Letter.

WHEREFORE Plaintiff demands:

      i.  Reimbursement for all money paid.

    ii.  An injunction barring Defendants from violating the terms of car purchase and sale contracts in the future

    iii.  An injunction barring Defendants from any further collection efforts directly or through any other entity.

    iv.  An injunction barring Defendants from selling Plaintiff's alleged debt.

    v.  An injunction barring Defendants from reporting any negative credit information regarding the Plaintiff's account.

    vi.  An order for interest, costs, and attorney fees plus such additional orders as this Honorable Court may deem fair and just.

    vii.  Triple damages.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

> Erica J. Wilder and all others
> similarly situated
> By their attorney
>
> /s/  Walter H. Jacobs, J.D.
>
> Walter H. Jacobs, J.D.
> 795 Turnpike Road
> North Andover, MA 01845
> 978-688-0900
> BBO # 672106

DATED: March 21, 2010

## CERTIFICATE OF SERVICE

I hereby certify, in compliance with Local Rule 5.2(b), that this document(s) filed through the EFC system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 21st day of March, 2010.

> /s/ Walter H. Jacobs, J.D.

DATED: March 21, 2010        Walter H. Jacobs, J.D.